**Robert E. ASHLEY, Defendant Below, Appellant,**

v.

**The STATE of Delaware, Plaintiff Below, Appellee.**

**No. 116/134, 1999.**

Supreme Court of Delaware.

Submitted: Oct. 18, 2001 *.

Decided: March 13, 2002.

Reargument Denied June 12, 2002.

---

* This case was argued on April 24, 2001. Thereafter supplemental filings were submitted, the last having been filed on filed on June 7, 2001. The Court took the case under submission at a decisional conference on October 18, 2001.

Robert Ashley, pro se (argued), Smyrna, Delaware; Standby Counsel: Michael W. Modica, Esquire (argued), Wilmington, Delaware, for Appellant.

Loren C. Meyers, Esquire, Timothy J. Donovan, Jr., Esquire, Paul Wallace, Esquire (argued), Thomas E. Brown, Esquire, and Elizabeth R. McFarlan, Esquire, Deputy Attorneys General, Department of Justice, Wilmington, Delaware, for Appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, and STEELE, Justices, and HARTNETT, Justice (Retired),** constituting the Court en Banc.

** Sitting by designation pursuant to Del. Const. art. IV, § 38 and 29 *Del. C.* § 5610.

PER CURIAM.

In this appeal from a death sentence following convictions for Murder in the First Degree and Possession of a Deadly Weapon During the Commission of a Felony, we consider whether a spectator's outburst, which was made in the presence of the jury immediately after the defense's closing argument in the guilt phase necessitated the granting of the defendant's motion for a mistrial. The spectator's outburst in this case was as follows: "Don't think he's not guilty, he stabbed me in the back 14 times. Don't think he's not guilty. He's nothing but a coward. Stabbed me in the back."

We hold that, under the circumstances of this case, the defendant's motion for a mistrial should have been granted. Under the circumstances of this case, the attempted curative instruction could not cure the prejudice to the defendant arising from this extraordinary outburst. Accordingly, we reverse the judgment of the Superior Court and remand this case for a new trial.

### Facts

On April 28, 1996, Thomas Younger was stabbed to death while incarcerated in the Maximum Security Unit at the Delaware Correction Center. The only witness to this assault was James Thompson, another inmate. Thompson testified that Ashley was the aggressor. Ashley testified that he acted in self-defense because Younger was the aggressor. Ashley was indicted for one count of Murder in the First Degree and one count of Possession of a Deadly Weapon During the Commission of a Felony for the stabbing of Younger.

This is Ashley's direct appeal from a death sentence following his second trial in the Superior Court on these charges. At

Ashley's first trial in March 1998, a mistrial was declared because the jury became deadlocked on the Murder charge and on the Possession charge, preventing it from reaching a unanimous decision.[1] Ashley acted pro se in both of his trials.

At the trial that resulted in the conviction and sentence now on appeal, Ashley testified in his own defense. Ashley admitted that he was convicted of a felony in 1992 for Assault in a Detention Facility.[2] Pursuant to D.R.E. 609(a),[3] the trial judge excluded the details of this prior conviction on prejudice grounds. The State twice moved to admit details of this conviction,[4] including Ashley's plea of guilty to stabbing another inmate with a shank while in prison.[5] On both occasions the Superior Court denied admission of these details based on D.R.E. 404(b)[6] and 608(b)[7] and stated that "this previous use of a shank in

a similar setting against another inmate was generally inadmissible ... to attack character and ... denied admission because it was not probative of Ashley's character for truthfulness."[8] The Superior Court held that this evidence was prejudicial because the jury was likely to infer that if Ashley committed a similar crime in the past, he would have violent propensities and likely would have committed the offense for which he was being tried.[9]

Immediately after Ashley's closing argument in the guilt phase, a courtroom spectator[10] stood up and yelled to the jurors, "Don't think he's not guilty, he stabbed me in the back 14 times. Don't think he's not guilty. He's nothing but a coward. Stabbed me in the back." After this astonishing outburst, Ashley moved for a mistrial. The Superior Court denied the motion and instead issued an instruction to

1. At Ashley's first trial, in addition to the above charges, he was also indicted for Promoting Prison Contraband. The jury found him guilty of this charge. *State v. Ashley,* 1999 WL 463708, at *1 n. 2 (Del.Super.).

2. *Ashley,* 1999 WL 463708, at *1 n. 2.

3. D.R.E. 609(a) states in relevant part: "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted but only if the crime (1) constituted a felony under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect...."

4. Ashley testified to "holding [a shank] on occasion." As a result of this testimony, the State argued that Ashley opened the door and that they should be permitted to cross examine Ashley on the details of his experience with shanks. This testimony was later stricken from the record because the trial judge held it to be irrelevant to the issues. *Ashley,* 1999 WL 463708, at *5.

5. A shank, for purposes of this case, is a knife made by hand, by an inmate, while in prison.

6. D.R.E. 404(b) states in relevant part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

7. D.R.E. 608(b) states in relevant part: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness...."

8. *Ashley,* 1999 WL 463708, at *4.

9. *Id.*

10. This spectator was later identified by Ashley as Matthew Palese, the fellow inmate that Ashley had pleaded guilty to stabbing with a shank in 1992.

the jury regarding the outburst.[11] The next day the jury found Ashley guilty as charged. At this time, Ashley renewed his motion for a mistrial and the trial court again denied it. The trial court reasoned that the curative instruction cured any prejudice that might have resulted from the spectator's outburst because the outburst did not allege that the previous stabbing was with a shank, occurred in prison, and involved Ashley as the aggressor. Following the penalty phase, the Superior Court sentenced Ashley to death. This is Ashley's direct appeal.

## Legal Issues

■■■ This Court reviews for abuse of discretion the Superior Court's decision to deny a motion for a mistrial.[12] It is well settled in Delaware that a mistrial is "mandated only where there are 'no meaningful and practical alternatives' to that remedy"[13] and that the "trial judge is in the best position to assess whether a mistrial should be granted."[14] Additionally, prejudice must be egregious when a cura-

tive instruction is deemed insufficient to cure prejudice to the defendant.[15]

## Spectator Outburst

■■■ In Ashley's case, the spectator's outburst injected into the trial the assertion of a prior bad act that was patently and squarely on point with the very type of crime for which Ashley was on trial. The outburst alleged that Ashley stabbed someone without provocation. The spectator shouted the outburst and the jury must have heard it. Before this outburst occurred, the trial judge twice excluded evidence of a prior stabbing where Ashley was the alleged aggressor. The exclusion was based on the fact that the details of this prior incident were unrelated to Ashley's truthfulness or credibility, were prejudicial, and violated D.R.E. 404(b) and D.R.E. 608(b). Likewise, the content of the spectator's outburst was so closely related to the evidence that had been excluded from Ashley's trial that the prejudice from the outburst far exceeds the threshold where a curative instruction can remedy the prejudice suffered.[16] Accordingly,

11. The instruction issued in this case was as follows:

> Ladies and gentlemen, we obviously just had an incident involving a gentleman who made some comments. This is a public forum and people are allowed to come in to it. I can't control who is here or not here unless they are disruptive of the proceedings.... Your verdict has to be based upon what you heard from this courtroom. I have no idea what the motives behind this guy or why he would have appeared at this point in time in the trial, but you are specifically instructed that you are to disregard anything you may have heard him say. You are to disregard the fact that this has occurred in this courtroom and a verdict has to be based solely on what has occurred from the witness stand. That is the only fair thing to do in regards to both the State and the defendant, and I would ask that you very, very seriously take to heart these comments.

12. *Taylor v. State,* 685 A.2d 349, 350 (Del. 1996).

13. *Dawson v. State,* 637 A.2d 57, 62 (Del. 1994) (quoting *Bailey v. State,* 521 A.2d 1069, 1077 (Del.1987)).

14. *Bowe v. State,* 514 A.2d 408, 410 (Del. 1986).

15. *Id.; see also Ney v. State,* 713 A.2d 932 (Del.1998) (stating that in certain cases "a cautionary instruction is a 'meaningful and practical' alternative obviating the need for a mistrial"); *Weddington v. State,* 545 A.2d 607, 611–15 (Del.1988) (holding that an instruction did not cure the prejudice of an unsupported interjection of race into the case).

16. *See Flonnory v. State,* 778 A.2d 1044, 1056 (Del.2001) (holding that when a juror hears information, outside of the jury room, which has been excluded from the trial, a limiting

the spectator outburst was so prejudicial that it could not be cured by an instruction and a mistrial was required.

### Harmless Error

██ The failure to grant a mistrial after the spectator outburst in this case cannot be viewed as harmless error because all the evidence exclusive of the outburst might not be sufficient to sustain a conviction considering that at Ashley's first trial the jury could not reach a unanimous verdict after weighing the same evidence absent the outburst.[17] Moreover, the outburst was prejudicial because this was a close case. The outcome was determined by the jury weighing which witness was the more credible, Ashley or Thompson (the eyewitness and fellow inmate). The outburst went directly to the key issue of whether or not Ashley was guilty, and it patently prejudiced Ashley's claim of self defense because it accused Ashley of previously being the aggressor in an unprovoked stabbing.

In *Ney v. State*[18] this Court confronted the issue of whether a curative instruction is sufficient. There, the defendant used temporary insanity as a defense to charges arising out of a domestic shooting. The jury inadvertently viewed evidence of Ney stating that he had not struck or hurt his wife in twelve years. This portion of Ney's testimony was supposed to have been redacted before the jury viewed it. The evidence in *Ney*, although relevant to the crime for which he was being charged, was irrelevant to his claim of insanity. This Court held that the error was harmless and that a curative instruction was sufficient to cure any prejudice that may have occurred.[19] The case before us is distinguishable from *Ney* because here the outburst was directly related to the charge. The attempted curative instruction in this case could not have cured the prejudice. This case is analogous to *Weddington v. State* where we held that an unsupported interjection of race by the prosecutor required the granting of a motion for mistrial.[20]

Finally, in Ashley's case, notwithstanding the judge's instruction, the jury could have accorded undue weight to this outburst since the bystander, even though unidentified to the jury, may have been thought by the jury to have nothing to gain by the outburst and was not subjected to cross-examination. Moreover the bystander's outburst occurred immediately after Ashley's closing argument, effectively undermining the force of the defense's closing. This outburst was likely to give rise to the impermissible inference that Ashley was acting in conformity with previous behavior, which is precisely the concern that the trial judge correctly weighed in excluding evidence of similar bad acts

---

instruction will not cure the prejudice suffered).

17. *Capano v. State*, 781 A.2d 556, 597 (Del. 2001) (noting that under well-established Delaware law, "[a]n error in admitting evidence may be deemed 'harmless' when 'the evidence exclusive of the improperly admitted evidence is sufficient to sustain a conviction'") (internal citations omitted). *See also McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 553, 104 S.Ct. 845, 78 L.Ed.2d 663 (1994) (noting "courts should ... ignore errors that

do not affect the essential fairness of the trial"); *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (requiring "fair assurance ... that the judgment was not substantially swayed by the error").

18. 713 A.2d at 932.

19. *Id.*

20. 545 A.2d at 611–15.

under D.R.E. 404(b) and 608(b).[21]

### Other Issues Raised on Appeal

Ashley also asserted other claims on appeal: (1) the jury selection denied him due process; (2) the trial court erred by ruling that Ashley's peremptory challenge was based on race; (3) the restrictions that the trial court placed on stand-by counsel's role violated Ashley's due process; (4) jury access to a transcript and/or tape of trial testimony unfairly prejudiced him; (5) the prosecutor's closing remarks characterizing Ashley as racist were plain and reversible error; (6) the trial judge denied Ashley his right to a fair sentencing proceeding by refusing to consider mitigating evidence that had not been presented to the jury; and (7) other aspects of the penalty phase of his trial violated his constitutional rights. These claims are moot in light of our reversal based on the prejudicial effect of the spectator's outburst on Ashley's trial, and we need not discuss them.

### Conclusion

The prejudice that Ashley suffered as a result of the spectator outburst was not harmless, and the failure to grant a mistrial deprived Ashley of his right to a fair trial. The judgment of the Superior Court is reversed and the case is remanded for a new trial.