# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID No. 1512004476 |
| | ) | |
| MICAH SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: January 24, 2020
Decided: March 16, 2020

***Upon Defendant's Motion for Postconviction Relief***
**DENIED**

***Upon Motion to Withdraw as Counsel***
**GRANTED**

## <u>MEMORANDUM OPINION</u>

Micah Smith, Howard R. Young Correctional Institution, Wilmington, Delaware.

Natalie S. Woloshin, Esquire, Woloshin, Lynch & Associates, P.A., Wilmington, Delaware.

Amanda J. DiLiberto, Deputy Attorney General, Department of Justice, Wilmington, Delaware

**Rocanelli, J.**

Micah Smith ("Defendant") has filed a motion for postconviction relief ("Defendant's Rule 61 Motion") with respect to his convictions for various criminal offenses involving sexual abuse of a child ("Child"). Defendant lived in the home of Child's family for approximately 10 years until Child's mother ("Child's Mother") learned of Child's allegations of abuse by Defendant. At the time the abuse allegedly occurred, in addition to Defendant who lived in the basement of the home, Child lived with Child's Mother, father, and brothers.

Defendant was represented at trial by Joe Hurley, Esquire ("Trial Counsel").[1] Following a five-day trial, a Superior Court jury found Defendant Guilty of Continuous Sexual Abuse of a Child; Sexual Abuse of a Child by a Person in a Position of Trust, Authority, or Supervision in the Second Degree; and three counts of Unlawful Sexual Contact in the First Degree. The Superior Court sentenced Defendant to 10 years of unsuspended Level V time, suspended an additional 47 years of Level V time, and imposed decreasing levels of supervision. The Delaware Supreme Court affirmed the Superior Court's judgment.[2]

Defendant timely filed Defendant's Rule 61 Motion asserting one claim of ineffective assistance of counsel. Natalie Woloshin, Esquire ("Rule 61 Counsel")

---

[1] Defendant was also represented at trial by Kevin Tray, Esquire. Defendant's ineffective assistance of counsel claim is not addressed to the representation by Mr. Tray.

[2] *See Smith v. State*, 2018 WL 2427594, at *6 (Del. May 29, 2018).

1

was appointed to represent Defendant with respect to Defendant's Rule 61 Motion. Upon review of the entire record, Rule 61 Counsel did not identify any meritorious claims and moved to withdraw as counsel. At the Court's request, Trial Counsel filed an affidavit addressing Defendant's claim of ineffective assistance of counsel. The State filed a response in opposition to Defendant's Rule 61 Motion. Defendant filed a response to Rule 61 Counsel's motion to withdraw and a reply to the State's response.

## PROCEDURAL HISTORY

### I.    Trial

At trial, the State presented testimony of numerous witnesses, including a forensic interviewer with the Children's Advocacy Center of Delaware ("CAC") who conducted two interviews with Child regarding Child's allegations of Defendant's abuse of Child; an employee from the DNA Unit of the Delaware Division of Forensic Sciences who tested samples taken from the bedroom where the abuse allegedly occurred; a detective employed with the Evidence Detection Unit of the New Castle County Police Department who examined the bedroom; a New Castle County Police Department detective who was assigned to investigate Defendant's case; Child; Child's Mother; Child's two brothers; and Child's father.

Defendant elected to present a defense. Several defense witnesses testified, including Defendant's mother, who was familiar with Defendant's living

2

arrangements; the detective who investigated Defendant's case; and a memory cognition expert who criticized certain questions asked by the CAC interviewer. Defendant also testified as a witness.

The evidence at trial showed the following:

- On April 24, 2015, Child, who was nine years old at the time, disclosed Defendant's abuse to Child's Mother who confronted Defendant and ordered Defendant to leave the home. The evidence also showed that Child's Mother had long been displeased with Defendant's presence in the home. Defendant left the household after being confronted by Child's Mother. Child's Mother then called the Division of Family Services to report Defendant's alleged abuse of Child.

- On May 4, 2015, Child was interviewed at CAC for the first time. During the interview, Child stated that something had happened involving Defendant but refused to talk about it. The police investigation into Defendant's conduct was closed after the first CAC interview.

- Child's Mother feared that Defendant would file a civil lawsuit against Child's Mother and her husband.[3]

- In October 2015, Child's Mother contacted the police officer who had previously investigated Child's claims about Defendant. At this time, Child's Mother reported that Child disclosed more details about Defendant's abuse.

- On November 16, 2015, the CAC interviewer conducted a second interview with Child during which Child disclosed additional details about abuse of Child by Defendant.

---

[3] Child's Mother testified that she worked as a marriage and family therapist and had a degree in clinical psychology. The Court precluded Child's Mother from testifying to matters involving Child's therapy.

- After Child's second CAC interview, the police collected potential evidence from the basement and the bedroom in which the abuse allegedly occurred. Testing of a bedspread located in the bedroom revealed DNA profiles, but Defendant was excluded as a contributor. However, the basement, including the bedroom, had been cleaned several times since Defendant had moved out more than six months previously.

During her testimony at trial, Child described how Defendant sexually abused her, including the frequency with which the abuse occurred. Child's statements during the CAC interviews were also admitted through video recordings pursuant to 11 *Del. C.* § 3507.[4] The younger of Child's two older brothers testified that he was often in the basement watching television or playing video games when Child went into Defendant's bedroom and recalled Child sometimes saying that she did not want to go into the bedroom. Child's oldest brother testified that he noticed Child spending time with Defendant in the bedroom when Child was eight years old.

Trial Counsel's defense strategy was to question the veracity of Child's allegations by suggesting that Child's Mother had manipulated Child into falsely believing that Defendant had abused Child in order to force Defendant out of the home. Defendant's mother testified that, in January 2014, Child's Mother stated that she hated Defendant and wanted him out of the home. Defendant's mother testified that she believed Defendant had a healthy relationship with Child. Defendant's

---

[4] *See* 11 *Del. C.* § 3507(a) ("In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.").

expert witness criticized certain questions asked of Child during the second CAC interview, suggesting that poor interview techniques could have led to false memories.

Defendant testified that he never touched Child in a sexual manner, that Child would visit his bedroom to play cards, and that he or Child would occasionally shut the bedroom door when Child's brothers were playing loud video games in the basement outside Defendant's room. Defendant also testified that he lived in the basement of the family's home to pay off student loans and to save money, and had lived in the basement for 10 years.

## II. Appellate Proceedings

After Defendant was sentenced and the convictions entered, Trial Counsel filed a timely notice of appeal to the Delaware Supreme Court on Defendant's behalf but later withdrew as counsel and Bernard J. O'Donnell, Esquire entered his appearance as appellate counsel ("Appellate Counsel") but concluded that the appeal was wholly without merit. Accordingly, Appellate Counsel filed a motion to withdraw as counsel along with a non-merit brief pursuant to Delaware Supreme Court Rule 26(c).

The Supreme Court affirmed Defendant's convictions on May 29, 2018.[5] In its decision, the Supreme Court addressed seven issues raised by Defendant on

---

[5] *See Smith*, 2018 WL 2427594, at *6.

appeal, including a portion of Child's Mother's testimony that forms the basis for the Defendant's Rule 61 Motion. The Supreme Court concluded that Defendant's appeal was "wholly without merit and devoid of any arguably appealable issue."[6]

## DEFENDANT'S CLAIM FOR POSTCONVICTION RELIEF

Defendant asserts one claim of ineffective assistance of counsel as the basis for postconviction relief. Specifically, Defendant argues that Trial Counsel mishandled a remark made by Child's Mother during the State's direct examination which referenced Defendant's time in jail:

> Q.      And specifically that trip to California, do you remember, if you can estimate, when that was?
>
> A.      Well, I was trying to think whether it was the spring – whether it was the spring of 2016 or if it was the summer of 2016. I'm bad with the dates.
>
> Q.      Was it 2016?
>
> A.      I believe it was 2016.
>
> Q.      And just so the record is clear, you asked [Defendant] to leave in April of 2015?
>
> A.      Yes. Though, like, honestly, my brain is so bad that it actually could have been, like, the summer of 2015. It wouldn't have been the spring of 2015 because that would have already passed, but it was relatively shortly after [Defendant] had – no, actually, when we went for the summer – *I mean, when we went to visit Debbie, [Defendant] was in jail.* So that would have been '16.

---

[6] *See id.*

Q.        Okay.  It was in 2016?

A.        Yeah.

[State]:   No further questions.[7]

This testimony is referenced as "Jail Comment."

Trial Counsel did not object to the Jail Comment.  Rather, Trial Counsel addressed the Jail Comment at the outset of Trial Counsel's cross-examination:

Q.        [Defendant] was in jail because he got arrested because of these charges, not for some other reason?

A.        Correct.[8]

Trial Counsel's cross-examination is referenced as "Jail Cross-Examination."

## I.    Standard of Review

### A.    Procedural Bars

Superior Court Rule of Criminal Procedure 61 governs Defendant's Rule 61 Motion.  Postconviction relief is a "collateral remedy which provides an avenue for upsetting judgments that have otherwise become final."[9]  To protect the finality of

---

[7] Tr. Trial 147:20–148:17, May 16, 2017 (emphasis added).
[8] *Id.* at 148:21–149:1.  The filings submitted by the State and Rule 61 Counsel also addressed a separate statement by Child's Mother which referenced jail.  Defendant clarified in his reply to the State's response that this statement does not form the basis for Defendant's ineffective assistance of counsel claim.  Nevertheless, upon review, the Court is satisfied that, even if presented, that claim would fail for the same reasons addressed to the Jail Comment and the Jail Cross-Examination.
[9] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).

criminal convictions, the Court must consider the procedural requirements for relief set forth in Rule 61(i) before addressing the merits of the Rule 61 Motion.[10]

Rule 61(i)(1) bars a motion for postconviction relief if it is filed more than one year from the final judgment of conviction;[11] this bar is not applicable as Defendant's Rule 61 Motion was timely.[12] Rule 61(i)(2) bars successive postconviction motions;[13] this bar is not applicable as this is Defendant's first postconviction motion. Rule 61(i)(3) bars relief if the motion includes claims not asserted in prior proceedings leading to the final judgment, unless the movant shows cause for relief from the procedural default and prejudice from violation of the movant's rights.[14] Rule 61(i)(4) bars relief if the motion includes grounds for relief formerly adjudicated in any proceeding leading to the judgment of conviction, in an appeal, or in a postconviction proceeding.[15] The bars set forth in Rules 61(i)(3) and 61(i)(4) do not apply because Defendant's claim is for ineffective assistance of counsel, which could not have been raised in prior proceedings.[16]

---

[10] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[11] Super. Ct. Crim. R. 61(i)(1).
[12] Defendant's Rule 61 Motion was filed on June 4, 2018, within one year after the Delaware Supreme Court affirmed Defendant's convictions on May 29, 2018.
[13] Super. Ct. Crim. R. 61(i)(2).
[14] Super. Ct. Crim. R. 61(i)(3).
[15] Super. Ct. Crim. R. 61(i)(4).
[16] *See Thelemarque v. State*, 2016 WL 556631, at *3 (Del. Feb. 11, 2016) ("[T]his Court will not review claims of ineffective assistance of counsel for the first time on direct appeal."); *Watson v. State*, 2013 WL 5969065, at *2 (Del. Nov. 6, 2013) ("It is settled Delaware law that this Court will not consider allegations of ineffective

**B.     Standard for Ineffective Assistance of Counsel**

The Sixth Amendment guarantees defendants in criminal trials the right to counsel.[17]  To assure that the outcome of a criminal trial is just, defendants furthermore have "the right to effective assistance of counsel."[18]  The standard used to evaluate claims of ineffective counsel is the two-prong test articulated by the United States Supreme Court in *Strickland v. Washington*,[19] as adopted in Delaware.[20]  The movant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[21]  Failure to prove either prong will render the claim insufficient;[22] therefore, even if a defendant can show that counsel made a professionally unreasonable error, the defendant must still show that the error had an effect on the

---

assistance of counsel made for the first time on direct appeal.").  Moreover, the State concedes that Defendant's claims are not procedurally barred.

[17] *Gideon v. Wainright*, 372 U.S. 335, 342–43 (1963).

[18] *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

[19] 466 U.S. 668 (1984).

[20] *See Albury v. State*, 551 A.2d 53 (Del. 1988).

[21] *Strickland*, 466 U.S. at 687.

[22] *Id.* at 688; *see also State v. McLaughlin*, 2014 WL 2964945, at *2 (Del. Super. July 2, 2014), *aff'd*, 2015 WL 1306916 (Del. Mar. 23, 2015) ("Because a defendant must show both that an attorney made a professionally unreasonable error and that the error had an effect on the judgment, failure to prove either is sufficient to defeat a claim of ineffective assistance."); *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).

judgment.[23]  Moreover, the Court shall dismiss entirely conclusory allegations of ineffective assistance.[24]

With respect to the first prong—the "performance prong"—the movant must overcome the strong presumption that counsel's conduct was professionally reasonable.[25]  To satisfy the performance prong, Defendant must assert specific allegations to establish that Trial Counsel acted unreasonably.[26]  The United States Supreme Court has pointed to "prevailing professional norms" as the standard against which to judge the reasonableness of counsel's representation with great deference given to counsel's strategic judgments.[27]  Simply because another strategy may have produced a better outcome in hindsight is not enough for a court to rule that a lawyer's performance was ineffective, given the strong presumption that the performance was adequate.[28]

With respect to the second prong—the "prejudice prong"—the movant must provide concrete allegations of prejudice, specifying the nature of the prejudice and

---

[23] *Strickland*, 466 U.S. at 692.
[24] *Younger*, 580 A.2d at 555; *Jordan v. State*, 1994 WL 466142, at *1 (Del. Aug. 25, 1994).
[25] *Strickland*, 466 U.S. at 687–88.
[26] *Id.* at 688; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996) ("Mere allegations of ineffectiveness will not suffice.").
[27] *Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").
[28] *See id*. at 680, 689, 712.

10

the adverse effects actually suffered.[29]  The Court must determine whether there is a reasonable probability that the outcome would have been different had Trial Counsel not made the alleged errors.[30]  This standard is lower than a preponderance of the evidence standard, as it only requires a finding that Trial Counsel's actions undermine confidence in the outcome of the proceeding in question.[31]

## II.    Defendant's Claim for Ineffective Assistance of Counsel Does Not Satisfy the *Strickland* Standard

Defendant argues that Trial Counsel should have (1) moved to strike the Jail Comment from the record; (2) requested a curative instruction; and/or (3) moved for a mistrial.  Defendant argues that, by merely addressing the Jail Comment with the Jail Cross-Examination, Trial Counsel "made a strategic error that caused [Defendant] actual prejudice under *Strickland*."[32]

### A.    Trial Counsel's Failure to Object to the Jail Comment and Request a Curative Instruction Was Reasonable and Did Not Prejudice Defendant

Trial Counsel's decision to address the Jail Comment with the Jail Cross-Examination instead of making an objection and requesting a curative instruction was a reasonable strategic decision.  "In order to eliminate 'the distorting effects of hindsight,' there is a strong presumption that trial counsel's representation was

---

[29] *Id.* at 692; *Dawson*, 673 A.2d at 1196.
[30] *Id.* at 694.
[31] *Id.*
[32] Def.'s Resp. to State's Resp. to Def.'s Rule 61 Mot. 7.

professionally reasonable."[33]    Accordingly, Trial Counsel's strategic decisions regarding how to address a witness's testimony are entitled to a strong degree of deference.[34]    In his affidavit, Trial Counsel states that he considered his options before addressing Child's Mother's Jail Comment on cross-examination and determined that an objection and curative instruction, if provided by the Court, likely would have drawn unnecessary negative attention to the Jail Comment.[35]    Trial Counsel states that he instead decided to "defuse the bomb of speculation" by immediately clarifying with Child's Mother that Defendant was in jail on the very same charges presented to the jury in this case and not for other unrelated charges or convictions.  This was a reasonable strategic decision that is entitled to deference.

Even if Trial Counsel's failure to object and request a curative instruction was unreasonable, Defendant cannot establish that he is entitled to relief because Defendant has not shown prejudice.  First, Trial Counsel cured any potential prejudice identified by Defendant when Trial Counsel immediately addressed the reason for Defendant's incarceration.  Specifically, Defendant argues that the Jail Comment caused prejudice because "the jury could have drawn impermissible inferences about why [Defendant] was in jail . . . [and] could have speculated that

---

[33] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014) (quoting *Gattis v. State*, 697 A.2d 1174, 1178 (Del. 1997)).
[34] *See id.*
[35] *See* Trial Counsel's Aff. Resp. to Def.'s Mot. 2–3.

[Defendant] had a prior conviction."[36]  However, Trial Counsel eliminated any such negative inference by clarifying that Defendant was in jail because of the charges for which he was now on trial.  Second, Defendant does not identify how a curative instruction might have changed the outcome of the trial.  As the Supreme Court noted, "As the sole trier of fact responsible for determining witness credibility, the jury could find the Child's testimony and out-of-court statements that [Defendant] intentionally had sexual contact with her multiple times while she was eight years old credible."[37]  There was ample evidence of guilt beyond a reasonable doubt.

Defendant cannot satisfy either prong of *Strickland* with respect to Trial Counsel's failure to object to the Jail Comment and request a curative instruction.  Accordingly, the claim must be denied.

B.    **Trial Counsel's Failure to Move for a Mistrial Did Not Prejudice Defendant**

Defendant further argues that Trial Counsel provided Defendant with ineffective assistance by failing to move for a mistrial after Child's Mother's Jail Comment.  Defendant cannot establish that a mistrial would have been proper under the circumstances and therefore cannot satisfy *Stickland*'s prejudice prong.[38]  Based

---

[36] Def.'s Resp. to State's Resp. to Def.'s Rule 61 Mot. 2.

[37] *Smith*, 2018 WL 2427594, at *6.

[38] In his reply, Defendant cites four federal circuit court decisions which examined, on direct appeals from the trial courts' verdicts, whether a new trial was proper after a witness referenced the defendant's incarceration or probation status.  Those decisions are inapposite because (1) they were issued on direct appeals from the trial

on the entire record and the decisional law addressing mistrial, even if a mistrial ruling had been requested, it would have been denied.

The Jail Comment was not solicited by the State. When deciding whether an unsolicited response by a witness requires declaring a mistrial, the Court considers four factors set forth by the Delaware Supreme Court in *Pena v. State*: "the nature and frequency of the conduct or comments, the likelihood of resulting prejudice, the closeness of the case and the sufficiency of the trial judge's efforts to mitigate any prejudice in determining whether a witness's conduct was so prejudicial as to warrant a mistrial."[39] "A mistrial is mandated only when there are 'no meaningful and practical alternatives' to that remedy."[40] Even if Trial Counsel had requested a mistrial, the Court would have denied that request under the *Pena* standard.

---

courts' verdicts and (2) the factual circumstances surrounding the witness' statements and/or the subsequent actions taken by the trial courts are distinct from the circumstances surrounding Child's Mother's Jail Comment in this case. *See United States v. Poston*, 430 F.2d 706 (6th Cir. 1970) (finding error where the trial court denied the defendant's motions to strike and to declare a mistrial after a witness referenced the defendant's probation status and no curative action was taken); *United States v. Smith*, 403 F.2d 74 (6th Cir. 1968) (finding a curative instruction to be insufficient where a witness referenced the defendant's prior jail sentence); *Tallo v. United States*, 344 F.2d 467 (5th Cir. 1965) (finding error where the trial court denied trial counsel's motion to strike and motion for a mistrial after a witness referenced the defendant's incarceration and no curative action was taken); *United States v. Stromberg*, 268 F.2d 256 (2d Cir. 1959) (finding no reversible when a witness mentioned the defendant's incarceration and the judge issued an immediate curative instruction).

[39] *Pena v. State*, 856 A.2d 548, 550–51 (Del. 2004).

[40] *Dawson v. State*, 637 A.2d 57, 62 (Del. 1994) (quoting *Bailey v. State*, 521 A.2d 1069, 1077 (Del. 1987)).

The first *Pena* factor—the nature and frequency of the statement—weighed against declaring a mistrial. The Jail Comment appears to have been a temporal anchor in Child's Mother's attempt to recall the year in which the California visit occurred. Moreover, the remark was a brief, isolated comment during a five-day trial.[41]

The second *Pena* factor—whether the statement created a likelihood of prejudice—also weighed against declaring a mistrial. Child's Mother was not asked about Defendant's incarceration. Moreover, the unsolicited reference to Defendant's incarceration by Child's Mother was not central to the testimony being offered.[42] In addition, the Jail Comment was a vague, fleeting remark.[43]

The third *Pena* factor—the closeness of the case—weighed slightly in Defendant's favor. Child's trial testimony about Defendant's abuse was generally consistent with her prior statements to Child's Mother and the CAC interviewer. In addition, the Delaware Supreme Court found, based on the evidence presented at

---

[41] *See Burns v. State*, 968 A.2d 1012, 1020 (Del. 2009) (finding the first factor weighed against declaring a mistrial when a witness's in-court outburst was an "isolated even that lasted only a few seconds").

[42] *Cf. Ashley v. State*, 798 A.2d 1019, 1022–23 (Del. 2002) (finding the content of a spectator's outburst was so closely related to evidence that had been excluded that the prejudice could not be cured)

[43] *See Payne v. State*, 2015 WL 1469061, at *2 (Del. Mar. 30, 2015) ("Given the vagueness of [the witness's] comment, the second factor of *Pena* weighs against finding that the trial court abused its discretion."); *Snipes v. State*, 2015 WL 1119505, at *3 (Del. Mar. 12, 2015) (noting that a witness's vague and innocuous reference to a previous trial did not create sufficient prejudice to warrant a mistrial).

trial, that "a rational jury could have found [Defendant] guilty beyond a reasonable doubt" of the crimes for which Defendant was convicted.[44] Nevertheless, "[t]his case, like many child molestation cases, ultimately rest[ed] on the jury's evaluation of the parties' credibility."[45] Accordingly, the third factor slightly favors Defendant because this case required a credibility determination as opposed to evaluation of other forensic evidence.

The fourth *Pena* factor— the sufficiency of the trial judge's efforts to mitigate any prejudice—weighed against declaring a mistrial where, as here, the Trial Court deferred to Trial Counsel's decision not to present a curative instruction. A mistrial is appropriate where curative action cannot sufficiently mitigate prejudice caused by the statement.[46] Moreover, a party's strategic decision not to request that the Court take curative action may be considered when evaluating whether a curative instruction should have been given.[47]

---

[44] *Smith*, 2018 WL 2427594, at *6.

[45] *Burns*, 968 A.2d at 1020.

[46] *See, e.g.*, *Payne*, 2015 WL 1469061, at *4 ("A mistrial must be declared when the prejudicial effect of the testimony is so great that a curative instruction is not sufficient to overcome it."); *Ashley*, 798 A.2d at 1022–23 (examining whether a curative instruction could remedy the prejudice suffered as a result of a spectator's outburst).

[47] *See Snipes*, 2015 WL 1119505, at *4 ("[Defendant's] counsel expressly requested that the trial court refrain from giving such an instruction. Accordingly, the fourth *Pena* factor weighs in favor of the State."); *Alexopoulos v. State*, 2016 WL 3267571, at *5 (Del. Super. Apr. 22, 2016) ("[Defendant's] decision to decline the Court of Common Pleas' offer to give a curative instruction was a tactical decision that

16

Trial Counsel did not request a curative instruction and the Court did not provide one. Nevertheless, Trial Counsel's prompt response to the statement accomplished the same goal that a curative instruction would have accomplished—to clarify that the only reason why Defendant was in jail was because he was detained on the charges being presented to the jury. Defendant concedes that the prejudicial effect of the remark was limited to potential "impermissible inferences" that the jury could have made "about *why* [*Defendant*] *was in jail*."[48] Any such inferences vanished when Trial Counsel clarified that Defendant "was in jail because he got arrested because of these charges, not for some other reason."[49] Trial Counsel's clarification sufficiently mitigated any prejudice that might have been caused by the Jail Comment. Accordingly, the fourth *Pena* factor weighed against declaring a mistrial.

The weight of the *Pena* factors militated against declaring a mistrial. The Child's Mother's unsolicited stray reference to Defendant's incarceration caused minimal prejudice which was promptly mediated by Trial Counsel. Importantly, any prejudice that may have occurred as a result of the Jail Comment was cured by Trial Counsel's prompt clarification of the circumstances surrounding Defendant's

---

constitutes a waiver of the ability to argue here that the trial judge's efforts to mitigate any prejudice were insufficient.").

[48] Def.'s Resp. to State's Resp. to Def.'s Rule 61 Mot. 2 (emphasis added).

[49] Tr. Trial 148:21–23, May 16, 2017.

17

incarceration during Jail Cross-Examination. Under these circumstances, a mistrial was not required; therefore, Trial Counsel's failure to move for a mistrial did not prejudice Defendant. Accordingly, Defendant cannot satisfy the prejudice prong of *Strickland* because, even if Trial Counsel would have moved for a mistrial, the Trial Court would have denied that request.[50]

## RULE 61 COUNSEL'S MOTION TO WITHDRAW

After reviewing the record to determine if there were any other meritorious grounds for relief and concluding that there are no such grounds, Rule 61 Counsel filed a motion to withdraw as counsel pursuant to Superior Court Criminal Rule 61(e)(7). Withdrawal may be appropriate when "counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant."[51] The Court must also conduct a review of the record to determine whether the defendant's motion contains any reasonable grounds for relief.[52]

---

[50] Because the Court finds no prejudice, the Court will not address whether Trial Counsel's failure to move for a mistrial was objectively reasonable under the prevailing professional norms. *See Strickland*, 466 U.S. at 697 ("The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

[51] Super. Ct. Crim. R. 61(e)(7).

[52] *State v. West*, 2013 WL 6606833, at *3 (Del. Super. Dec. 12, 2013).

Rule 61 Counsel has stated that she undertook a thorough analysis of the record to evaluate Defendant's claim and determined that the claim does not have enough merit to be ethically advocated. Specifically, Rule 61 Counsel has concluded that Trial Counsel's strategic decision to address the remark on Jail Cross-Examination is entitled to deference and that the clarification cured any prejudice that the Jail Comment created. Rule 61 Counsel also reviewed the record to determine if any other meritorious grounds for relief exist and found none. Finally, the Court has reviewed Defendant's Rule 61 Motion and has found no meritorious grounds for relief.

## CONCLUSION

Defendant's claim for postconviction relief is without merit. Defendant has not established ineffective assistance of counsel under the test set forth in *Strickland*. Accordingly, Defendant's Rule 61 Motion must be denied.

Rule 61 Counsel was appointed to represent Defendant in the postconviction proceedings and, after a careful review, concluded that there are no meritorious grounds for postconviction relief that can be ethically advocated. Accordingly, Rule 61 Counsel shall be permitted to withdraw as counsel.

**NOW, THEREFORE,** this 16th day of March 2020, Defendant Micah Smith's Rule 61 Motion is hereby **DENIED** and the motion of Natalie S. Woloshin, Esquire to withdraw as counsel is hereby **GRANTED.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*
_____
**The Honorable Andrea L. Rocanelli**