**Jose F. PENA, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 555, 2003.

Supreme Court of Delaware.

Submitted: June 8, 2004.
Decided: Aug. 12, 2004.

Jerome M. Capone, Wilmington, Delaware, for Appellant.

Gregory E. Smith, Department of Justice, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

STEELE, Chief Justice.

A Superior Court jury convicted Jose Pena of various drug-related charges. Pena moved in Superior Court for a mistrial based on a repeated reference to a narcotics investigation by a State's witness as the impetus for an initial traffic stop. Counsel for both parties had agreed before trial that the witness would not refer to the drug investigation because of its potentially prejudicial effect upon the jury. The trial judge denied the motion after giving cautionary instructions to the witness and jury.

After reviewing the record, we find that the trial judge acted appropriately within his discretion, this was not a close case, and that Pena was not denied a fair trial. Accordingly, we AFFIRM the judgment of the Superior Court.

## I.

Around noon on September 23, 2002, Appellant Jose Pena encountered Lakisha Brown on her way to a GED class at DelTech in Wilmington and asked if she would be interested in accompanying him to New York City later that day. Brown and Pena had met at a club two nights earlier. Brown agreed and phoned a friend, Nicole Shaw, to see if she would join them. Brown and Shaw thought that they would be going to New York City to go clubbing and have some money spent on them. They also expected to prostitute themselves in exchange for money and marijuana. Alex Rosa, a man unfamiliar to both Brown and Shaw, also accompanied them to New York City.

They departed Wilmington that afternoon and arrived at Pena's mother's apartment in the Bronx that evening. Pena left the apartment for about half an hour to purchase some crack cocaine while Rosa, Brown, and Shaw sat down to eat dinner. When Pena returned he asked Brown and Shaw to go into the bathroom with him where he broke a large piece of cocaine into two pieces and placed it into two plastic bags. He then asked the two women to place it into their vaginas in order to conceal it during the return trip to Delaware. The women agreed to do so.

Before they left New York City to return to Delaware, Pena and Rosa stopped to buy some marijuana. While Pena and Rosa were out of the car making the purchase, Brown and Shaw removed the cocaine from their vaginas, broke off some small pieces, and placed them in Shaw's purse. They returned the remaining cocaine to their vaginas. Upon their return to Wilmington, the police, acting on a tip, stopped the gold Acura in which they were traveling near the intersection of Maryland Avenue and South Broom Street. The car improperly displayed a temporary tag. The police recovered almost 32 grams of crack cocaine from the women's purse and vaginas.

Pena was arrested and later testified that he knew nothing about the drugs. He said the three dropped him off in New York City, that he went to his mother's house alone by taxi, and that they later picked him up for the trip back to Delaware.

After a three day Superior Court trial, a jury convicted Pena of: Trafficking in Co-

caine; Possession with Intent to Deliver Cocaine; Maintaining a Vehicle for the Delivery of a Controlled Substance; Conspiracy in the Second Degree; and Criminal Impersonation. He was sentenced, *inter alia*, to a total of 16 years at Level V, suspended at various points for decreasing levels of probation.

## II.

Pena insists that the repeated improper references to a "drug investigation" as the purpose for stopping Pena's car by the State's witness so prejudiced his right to a fair trial that his motion for a mistrial should have been granted. He maintains that the repeated, prejudicial references by the State's witness, and the denial of the motion for a mistrial, ultimately forced him to change his trial strategy and testify in his own defense.

Before trial, the prosecutor and defense counsel agreed that no police witness would mention the narcotics investigation that led to the traffic stop and Pena's arrest. The prosecutor cautioned Detective Vincent Jordan before he took the stand not to cite the drug investigation as the reason he stopped Pena's car. Shortly thereafter, the following exchange took place during direct examination of Detective Jordan:

Q. What was your assignment those early evening hours?

A. Conducting a drug investigation.

The defense objected and, after a sidebar conference, the objection was overruled. The judge did not directly prohibit Detective Jordan from using the phrase "drug investigation," but he did suggest that the

prosecutor "lead him through this" by asking him: "Did he stop the car?" Five answers later, Detective Jordan said that he asked the two women if he could question them "in regard to the other investigation." The defense did not object to this response.

Finally, when asked about his interaction with Brown during the traffic stop, Detective Jordan responded that she had given him a false name and that he mentioned that he was "conducting an investigation in regards to narcotics." The defense objected and the trial judge instructed the witness to refrain from references to drug investigations. He also instructed the jury to disregard the witness's last response.[1] Detective Jordan made no more references to the investigation. After Detective Jordan's testimony was finished, defense counsel moved for a mistrial. The court reserved judgment but later denied the motion.

## III.

■■■ A trial judge sits in the best position to determine the prejudicial effect of an unsolicited response by a witness on the jury.[2] We review the denial of a motion for mistrial after an unsolicited response by a witness for abuse of discretion or the denial of a substantial right of the complaining party.[3] In doing so, we consider the nature and frequency of the conduct or comments, the likelihood of resulting prejudice, the closeness of the case and the sufficiency of the trial judge's efforts to mitigate any prejudice in determining

---

1. The trial judge said: "Objection sustained. The jury will disregard that last answer, all such references hereafter by the witness should [not be] used. The Court is allowing this only to explain what—just leave it at that."

2. *Taylor v. State*, 690 A.2d 933, 935 (Del. 1997).

3. *Id.*

whether a witness's conduct was so prejudicial as to warrant a mistrial.[4]

■ The prosecutor cautioned detective Jordan before he testified not to mention the narcotics investigation during his testimony. Jordan's two objectionable references did not constitute an outburst nor were they intentionally non-responsive. Both were direct answers to otherwise routine, specific questions. There is no suggestion that Jordan intended to circumvent the prosecutor's admonition on the trial judge's ruling. Importantly, Jordan did not persist after being instructed by the trial judge to refrain from making further reference to a drug investigation.

The two references to an unspecified narcotics investigation are unlikely to have misled the jury or to have prejudiced Pena unfairly. We note that Detective Jordan referred only generically in both instances to an investigation. The first reference was in response to his "assignment" on the evening of the incident. The second reference was in direct response to a question about what he said to Brown during her detention at the time of the traffic stop. Detective Jordan's testimony did not reveal that Pena was the target of the investigation, or that the traffic stop was a part of the Pena investigation.

Further, the record makes it clear that it was not a close case. Pena was seated in the front passenger seat of a car that had just returned from a trip to New York City when drugs were found on two other passengers. Receipts from travel plazas along the way confirmed testimony about the travel. Brown and Shaw both testified that they were carrying the cocaine as instructed by Pena. They testified that Pena invited them to New York City, purchased the cocaine, and then asked them to conceal the drugs in their vaginas until they returned to Delaware. The jury chose to believe their testimony. The fact that they admitted to drug use and prostitution made them more credible and likely, not less likely, to be acting as mules in drug trafficking.[5]

■ Finally, the trial judge took steps to mitigate any prejudice that may have resulted from the "investigation" comments. Prompt jury instructions are presumed to cure error and adequately direct the jury to disregard improper statements, even when the error references extraneous offenses.[6] In *Dawson*, a witness referred to the defendant's previously overturned death penalty conviction. The judge instructed the jury to disregard and this Court held that it was an adequate instruction. Like an extraneous offense, an ongoing drug investigation can arouse prejudice that a defendant is more likely to have committed the alleged crime. Here, as in

---

4. *Griffith v. State*, No. 570,2002, 2003 WL 1987915, at *4, 2003 Del. LEXIS 254, at *5 (Del.2003); *Taylor*, 690 A.2d at 935 First, the Court examines the nature, persistency, and frequency of the outburst. Second, the Court considers whether the outburst created a likelihood that the jury was misled or prejudiced. Third, the Court examines the closeness of the case. Fourth, the Court considers the trial judge's attempt to mitigate any prejudice.

5. *See e.g. Malloy v. United States*, 605 A.2d 59, 60 (D.C.1992) (describing the practice of drug dealers using other individuals as "mules" to transport drugs from place to place in order to reduce the risk that they will be caught with drugs on their own person).

6. *Dawson v. State*, 637 A.2d 57, 62 (Del.1994) (jury instruction sufficient to cure prejudice even when the error references extraneous offenses); *Brown v. State*, No. 528,2000, 2001 WL 898589, at *2, 2001 Del. LEXIS 325, at *3 (Del.2001) (juries are presumed to understand and follow instructions issued by the Superior Court); *Zimmerman v. State*, 628 A.2d 62, 66 (Del.1993) (jury instruction usually sufficient to remedy prejudice caused by improper admission of evidence).

*Dawson,* the trial judge acted appropriately by both instructing the witness not to make any more references to a drug investigation and instructing the jury to disregard the witness's comment.

Mistrials are required "only where there is 'manifest necessity' or the 'ends of public justice would be otherwise defeated.' "[7] Here, the references to a narcotics investigation were not so prejudicial that they required a mistrial. This was not a close case and the trial judge's instructions to both witness and jury were sufficient to mitigate any prejudice to Pena. The trial judge's instruction appropriately kept the jury focused on the incident in question and did not unnecessarily compound the effect of the references to a narcotics investigation. Further, the trial judge correctly reasoned that while the jury may have been curious about why Pena's car was stopped, the instruction tended to deflect any speculation that it was the result of a narcotics investigation.

Finally, Pena cites no legal authority to support a reversal of his conviction and sentence because he was "forced to change his trial strategy and testify in his own defense." Pena fails to show how his testimony harmed his case. Because this argument rests on a supposition that a mistrial should have been declared, and we have found otherwise, Pena's contention has no merit.

### IV.

For the foregoing reasons, the judgment of the Superior Court is hereby AFFIRMED.

---

7. *Davis v. State,* 1999 WL 86055, at *2 (Del.) (quoting *Steckel v. State,* 711 A.2d 5, 11 (Del. 1998)).