IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DERRELL SNIPES, | § | |
| | § | No. 447, 2014 |
| Defendant-Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware in |
| STATE OF DELAWARE, | § | and for Sussex County, Delaware |
| | § | Cr. ID No. 1305019727 |
| Plaintiff -Below, | § | |
| Appellee. | § | |

Submitted: February 25, 2015
Decided: March 12, 2015

Before **HOLLAND, VALIHURA**, and **VAUGHN**, Justices.

## ORDER

This 12th day of March 2015, it appears to the Court that:

(1) The defendant-below/appellant Derrell Snipes ("Snipes") appeals from a Superior Court's order denying his motion for a mistrial, and a subsequent jury conviction of Possession of a Firearm by a Person Prohibited ("PFBPP") and Possession of Ammunition by a Person Prohibited ("PABPP").

(2) Snipes raises one claim of error in this appeal. Snipes contends that the trial court abused its discretion by not declaring a mistrial after the jury was informed three times by a testifying police officer that there had been a prior trial. We find no merit to Snipes' claim and affirm the Superior Court's judgment of convictions.

(3) On May 24, 2013, Dover Police Department Patrolman First Class John Michael Willson ("Patrolman Willson") was on patrol at 2 a.m. on South New Street in Dover when he observed a group of 15 to 20 people gathering in front of the Colonial Apartments at 132 South New Street. Patrolman Willson reported the situation to his supervisor, Sergeant Spicer ("Sgt. Spicer"). Sgt. Spicer ordered Patrolman Willson to return to the Dover Police station, gather other officers, and devise a plan. Willson contacted Master Corporal Brian Sherwood ("Master Corporal Sherwood"), Patrolman First Class Joseph Bauer ("Patrolman Bauer") and Patrolmen Matthew Krogh ("Patrolman Krogh"), James Wood ("Patrolman Wood"), and Brian Schmidt, and requested they meet him at the Dover Police station.

(4) At the police station, the police officers were able to observe the civilians assembled on South New Street via a remote camera that was transmitting images to two 72 inch high definition screens. They observed Trevor Jenkins ("Jenkins") walk to a silver Mercury Marquis automobile parked on South New Street, retrieve an object from the driver's compartment, and place it in his right rear pocket. Next the officers saw Warren Brooks ("Brooks") walk to the same car, open the trunk, remove a long object covered with clothing or cloth, and walk

to an alleyway fence. Brooks then set the object on the other side of the fence where it was retrieved by Snipes.

(5)    In response to what Sgt. Spicer thought to be an imminent shooting, Patrolman Willson and Master Corporal Sherwood were dispatched to New Street and the other four officers were sent to South Queen Street. Upon arrival at South Queen Street, Patrolman Krough and Patrolman Wood shined a flashlight down an alleyway and saw approximately 15 individuals. Three of the individuals, Brooks, Jenkins, and Snipes, saw the officers and began to run.

(6)    Patrolman Wood chased Snipes. With Patrolman Wood in pursuit, Snipes stopped as he ran deeper into the alley, threw the object he was carrying into a grassy area next to a tree, and began walking back toward the group of individuals who did not run. Patrolman Wood was within ten feet of Snipes when he witnessed Snipes throw the cloth package to the ground. Patrolman Wood took Snipes into custody as he started to walk back towards the group. The object Snipes had thrown on the ground was retrieved by Patrolman Bauer. It was thereafter determined that the cloth covered object was a sawed-off shotgun containing two 12-gauge rounds. Brooks and Jenkins were also captured and taken into police custody.

3

(7)     The trials of Brooks, Jenkins, and Snipes were consolidated. A jury found Snipes guilty of resisting arrest, but could not reach a unanimous verdict as to Snipes and Jenkins on the charges of PFBPP or PABPP.

(8)     In April 2014, Snipes and Jenkins were retried in a consolidated trial for the firearm offenses. On cross-examination by defense counsel, Master Corporal Sherwood mentioned a prior trial on three separate occasions. First, when asked by Jenkins' defense counsel if he had viewed the surveillance video, Master Corporal Sherwood stated "[t]he last time I viewed it was at the last trial." Master Corporal Sherwood was later asked by Snipes' defense counsel whether he had reviewed a written report by the chief investigating officer, and Master Corporal Sherwood responded, "[a]t the last trial I did, yes." After some additional questions about the report, Snipes' counsel asked, "[y]ou indicated you read it?" and Master Corporal Sherwood replied, "I read it at the beginning of the last trial, yes." At no time did either of defendants' counsel object to Master Corporal Sherwood's references to the prior trial.

(9)     Shortly thereafter, the trial court ordered a recess for lunch. After the jury left the courtroom, the trial court addressed its concern regarding Master Corporal Sherwood mentioning the prior trial three times during his testimony. Both Snipes' and Jenkins' attorneys requested a curative instruction that stated "there was a reference to a prior trial and that information should be disregarded."

4

(10) However, after the lunch recess, Snipes' counsel informed the trial court that she did not think a curative instruction would suffice and moved for a mistrial. Jenkins joined Snipes in the motion for a mistrial. The trial court denied the motion for a mistrial. The court reasoned that the references in question were made by only one witness, there were no references to prior convictions, and the answers were in response to defense counsel's questions on cross-examination.

(11) After the motion for a mistrial was denied, counsel for Jenkins stated a curative instruction did not appear to be proper because it would bring up the issue of a prior trial again. Counsel for Snipes and for Jenkins each stated that they would not ask for a curative instruction. Snipes was found guilty of both firearm offenses. This appeal followed.

(12) A decision to grant or deny a mistrial is reviewed for abuse of discretion.[1] "This grant of discretion recognizes the fact that a trial judge is in the best position to assess the risk of any prejudice resulting from trial events."[2] "A trial judge should grant a mistrial only when there is manifest necessity or the ends of public justice would be otherwise defeated. The remedy of a mistrial is mandated only when there are no meaningful and practical alternatives to that remedy."[3]

---

[1] *Smith v. State*, 963 A.2d 719, 722 (Del. 2008).
[2] *Revel v. State*, 956 A.2d 23, 27 (Del. 2008).
[3] *Smith*, 963 A.2d at 722 (internal quotations omitted).

(13) In *Pena v. State*, this Court developed a four-part analysis to determine whether the unsolicited comments of a witness require the trial judge to declare a mistrial.[4] This analysis considers: (1) the nature and frequency of the comments; (2) the likelihood of resulting prejudice; (3) the closeness of the case; and (4) the sufficiency of the trial judge's efforts to mitigate any prejudice.[5]

(14) Applying the four-part *Pena* analysis to the case at bar, the first prong favors the State. The nature and frequency of the comments made by Master Corporal Sherwood do not favor the grant of a mistrial. The references at issue here were made by a single witness testifying on the second day of a four-day trial. The references were nonspecific and could have referred to a trial that did not involve Snipes. The remarks were made in response to questions by defense counsel and were not elicited by the State.

(15) Snipes relies on our holding in *Bailey v. State*,[6] to support his contention that a mistrial was warranted. In *Bailey*, we found a mistrial was warranted after three witnesses mentioned that the defendant had been previously tried for murder, the offense for which he was currently being tried.[7] However, as the trial court noted in this case, *Bailey* can be distinguished because three witnesses testified in *Bailey* as opposed to one witness in this case, and the third

---

[4] *Pena v. State*, 856 A.2d 548, 550-51 (Del. 2004).
[5] *Id.*
[6] *Bailey v. State*, 521 A.2d 1069 (Del. 1987).
[7] *Id.* at 1072.

witness in *Bailey* explicitly mentioned the defendant's prior murder conviction. In this case, Master Corporal Sherwood did not reveal who was involved in the last trial or the outcome. Thus, the first prong of *Pena* favors the State and militates against finding that the trial court abused its discretion by not declaring a mistrial.

(16) As to the second prong of *Pena*, the likelihood of resulting prejudice, the jury was not told who was involved in the previous trial or what the outcome was in the previous trial. Additionally, the references to the first trial were vague, innocuous, and made no specific reference to Snipes or the crime for which he was charged. Snipes' attorney correctly pointed out that the jury might assume that the last trial was the trial of Brooks, Snipes' absent co-defendant in the instant case. Accordingly, the second prong of *Pena* favors the State and weighs against finding that the trial court abused its discretion by not declaring a mistrial.

(17) The third prong of *Pena* also weighs in favor of the State. This was not a close case. Brooks was caught on video removing a long, hard object wrapped in cloth from the trunk of a car. He was then seen placing the object on the other side of a fence. Snipes was seen retrieving the object. When Patrolman Wood arrived at the scene, he saw Snipes holding the object and saw him throw the object into the grass.

(18) Patrolman Wood took Snipes into custody within ten feet of where the object had been thrown, never losing sight of Snipes or the object. At Patrolman

Wood's direction, Patrolman Bauer retrieved the object and discovered a loaded shotgun inside the cloth covering. There was more than sufficient evidence to allow a rational trier of fact to find Snipes guilty of the firearm offenses. Thus, the third prong of *Pena* favors the State.

(19) As to the final prong of *Pena*, the trial court offered to give a curative instruction in order to mitigate any prejudice caused by Master Corporal Sherwood's references. In fact, the trial court gave defense counsel an opportunity to craft the curative instruction to its satisfaction for submission to the court. Significantly, however, both Snipes and Jenkins made a strategic decision to decline the court's offer to give a curative instruction. Specifically, Snipes' defense counsel stated, "[A]ny curative [instruction] that you would give would just further inflame the situation and reinforce the fact that there had been a previous trial, which is inappropriate during the trial."

(20) In this direct appeal, Snipes cannot challenge the reasonableness of his defense counsel's strategy. The trial court offered to give the jury a curative instruction. Snipes' counsel expressly requested that the trial court refrain from giving such an instruction. Accordingly, the fourth *Pena* factor weighs in favor of the State.

(21) After carefully weighing the factors under a *Pena* analysis, we conclude the trial court was within its discretion in denying Snipes' motion for a mistrial.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby, is AFFIRMED.

BY THE COURT:

_____
Justice