IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT ASBURY, | § | |
| | § | No. 351, 2014 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware, in and |
| | § | for New Castle County |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID. No. 1306006968 |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: October 7, 2015
Decided: October 13, 2015

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## **O R D E R**

This 13th day of October, 2015, it appears to the Court that:

(1)     The State indicted Robert Asbury on September 16, 2013, charging him with first degree rape, strangulation, and attempted first degree rape of Lisa Lockhart.  Following a four day jury trial, on April 1, 2014, the jury convicted Asbury of strangulation and attempted first degree rape, and acquitted him of first degree rape.  The State moved to declare Asbury a habitual offender, and on June 20, 2014, the Superior Court granted the motion and sentenced Asbury to life at Level 5 for the attempted rape conviction, and six years at Level 5 followed by two years at Level 3 for the strangulation conviction.

(2)     On appeal, after defense counsel moved to withdraw, the State moved to affirm. This Court granted the motion to withdraw, denied the State's motion, and appointed new counsel.  Asbury's new counsel raises one argument in the present appeal - the Superior Court abused its discretion by denying Asbury's request for a mistrial when on cross-examination by defense counsel, Lockhart stated in response to a question about the timeline of their relationship, that Asbury had been in jail.  Instead of granting a mistrial, the trial judge immediately instructed the jury to disregard the statement.  We find no abuse of discretion by the Superior Court and therefore affirm.

(3)     Asbury and Lockhart met in the mid-2000s when Asbury helped Lockhart change a flat tire on her car.[1]  The two dated casually and maintained an on-again-off-again relationship and friendship for approximately ten years.  In late 2013, Lockhart was homeless and living at the Fairview Inn.  At some point in November, she contacted Asbury who offered to share with her his one bedroom trailer.[2]  The two lived as roommates and shared bills.  Lockhart paid for most of the rent and Asbury paid for utilities and part of the rent.[3]  Eventually, the two decided to move into a larger, two-bedroom trailer down the street because Lockhart was reduced to sleeping on the couch and had no privacy.  In the new

---

[1] App. To Opening Br. At 74-75 (Trial Test. Of Lockhart, March 27, 2014).
[2] *Id*. at 75, 128.
[3] *Id*. at 75.

2

trailer, Lockhart still slept on the couch, but she was able to keep most of her belongings in the second bedroom.[4]

(4)     On Saturday, July 8, 2013, Asbury invited several of his male friends over to his trailer for barbecue and drinks. Lockhart remained inside and talked on the phone with her friends and read a book. Around 5:30 a.m. the next morning, Lockhart woke up and began cleaning up from the previous night's party. Asbury woke up a few hours later and immediately began drinking alcohol and bickering with Lockhart. After some time, Lockhart retreated to the kitchen to check on the food she was cooking.[5]

(5)     While Lockhart was in the kitchen, Asbury grabbed her from behind in a "chokehold" motion and began strangling her.[6] He told Lockhart, "I hope you liked your life because now I'm taking it," and then made a crude comment about needing to resort to force for sex.[7] Lockhart fought back and right before she believed she was going to pass out from the lack of oxygen, she gouged Asbury's eye causing him to bleed profusely. Asbury released pressure from her neck and pushed her against a door, tore off her shorts and underwear, and removed his own

---

[4] *Id.*

[5] *Id.* at 75-78.

[6] *Id.* at 77-78. Asbury testified that he agreed to paint the deck in exchange for sex with Lockhart. *Id.* at 134 (Trial Test. Of Asbury, March 31, 2014). He states that the two consented to sex but Lockhart became enraged when he was unable to perform and gouged his face. *Id.* at 134-36. He states that he held her on the ground so that he could talk to her and once he let go, she ran out. *Id.* at 136.

[7] *Id.* at 79 (Trial Test. Of Lockhart, March 27, 2014).

3

shorts and underwear. He then attempted forced oral sex with Lockhart until she struck him with her knee. Asbury then attempted to have sex with Lockhart, but was unable to obtain an erection. Asbury then sat on Lockhart's chest and inserted his penis into Lockhart's throat for several minutes. Lockhart continued to fight back. She was eventually able to escape when she squeezed and twisted Asbury's scrotum causing him to release her, allowing her to flee.[8]

(6) Lockhart fled the trailer wearing only a shirt, bra, and a blanket. She knocked on several neighbors' doors until finally a woman who lived adjacent to her let her in and called the police. Lockhart was covered in bruises and scratches including a large bruise in the shape of a hand on her neck and internal bruising in her throat. The police used a canine and helicopter to search for Asbury but were unable to locate him until the next day. He was found at a bus stop on Philadelphia Pike with blood and scratches on his face and was taken into custody.[9]

The Issue on Appeal

(7) While Lockhart was on the witness stand during trial, Asbury's counsel questioned Lockhart about the timeline of their relationship. In response to a question, Lockhart mentioned Asbury's prior incarceration:

Q. Ms. Lockhart, how long ago was it that you first met Mr. Asbury?
A. I knew him for about – from ten years ago.
Q. First met him about ten years ago?

---

[8] *Id*. at 79-81; 98.
[9] *Id*. at 44-45; 48-49; 57-60; 67-70.

4

A. Yeah.

Q. And you dated him for a while about ten years ago; is that right?

A. We went on three dates to see football games at the casino at three different – maybe – during one month, then another month and another month; three dates.

Q. Did you ever have any sexual relations with him during that period of time?

A. No, I did not.

Q. At some point – was that when he was a boarder?

A. That was – we went to one game before he moved in, because he was having trouble where he was living and I said, I do have a place to rent as a boarder, you know, because everybody could help everybody else out as long as they were decent to live with and he never showed me any signs of harm. He was always pretty calm, cool and collected, nice. Never saw him – he never raised a hand to anyone or was rude.

Q. Was that when he was a boarder when you had those three dates with him?

A. Yes. And it was over, like, a period of three or four months. We had a date here, a date there, a date there, you know, not in the same month.

Q. Was there a time when [Asbury] ceased to be your boarder?

A. Yes, he – he went to jail.[10]

(8)    Defense counsel moved for a mistrial, which the Superior Court denied in favor of an immediate curative instruction: "Ladies and gentlemen, I'm going to ask you to disregard entirely the last piece of testimony offered by the witness."[11]   Defense counsel then rephrased the question to elicit the timeframe when Asbury stopped being Lockhart's boarder, without reference to his prior incarceration.[12]

---

[10] *Id*. at 88.
[11] *Id*. at 88-89.
[12] *Id*.

5

(9)     Asbury argues on appeal that the Superior Court should have granted his motion for a mistrial because the reference to Asbury's prior incarceration caused prejudice to his defense, and a curative instruction was insufficient to cure the prejudice.  This Court reviews the denial of a motion for mistrial for abuse of discretion because "the Superior Court is in a better position to measure the risk of prejudice from events at trial."[13]  "[W]here a court has not exceeded the bounds of reason in the view of the circumstances, and has not so ignored recognized rules of law or practice, so as to produce injustice, its legal discretion has not been abused."[14]

(10)   On similar facts as this case, in *Flowers v. State*,[15] we held that the Superior Court did not abuse its discretion in denying a mistrial after a witness's unresponsive answer to timeframe questions, which mentioned the defendant's incarceration as a point of reference.[16]  The trial judge gave an immediate curative instruction to cure any unfair prejudice to the defendant.  We determined that the witness's "vague and unsolicited" reference to jail time "lessened the impact of the testimony," and did not "reveal why the defendant was in prison and for how long."  We also held that the immediate curative instruction remedied any unfair

---

[13] *Justice v. State*, 947 A.2d 1097, 1100 (Del. 2008) (quoting *Guy v. State*, 913 A.2d 558, 565 (Del. 2006)).
[14] *Pitts v. White*, 109 A.2d 786, 788 (Del. 1954).
[15] 858 A.2d 328 (Del. 2004).
[16] *Id.* at 332-33.

prejudice. For the same reasons, the trial judge in this case did not abuse its discretion in denying Asbury's request for a mistrial.[17]

(11) When considering whether a witness's unsolicited comments require the trial judge to declare a mistrial, we look to the four factor test of *Pena v. State* - first, the nature and frequency of the offending comment; second, the likelihood of resulting prejudice; third, closeness of the case; and fourth, the adequacy of the trial judge's actions to mitigate any potential prejudice.[18] Considering these factors, the Superior Court did not abuse its discretion by refusing to grant a mistrial.

(12) Under the first factor, the offending comment occurred only once, came from questioning by defense counsel, was vague and unsolicited, and arose in the context of the historical relationship between the parties. Under the second factor, the likelihood of prejudice was low. Asbury later took the stand and admitted that he was convicted of two felony DUIs and felony theft of a motor vehicle, and that he was on probation while living at the trailer.[19] This testimony

---

[17] *Id.*

[18] 856 A.2d 548 (Del. 2004).

[19] App. to Opening Br. at 129-30 (Tr. Test. of Asbury March 31, 2014). Asbury also argues that the denial of a mistrial compelled him to testify and caused prejudice. It is unlikely that Asbury decided to testify as a result of Lockhart's stray reference to Asbury's time in jail. Instead, there were only two witnesses to the incident, and without his testimony, Lockhart's testimony was unrebutted. Further, Asbury's reliance on *Jenkins v. State*, 2010 WL 596505, at *3 (Del. Super. Ct. Feb. 18, 2010) is unavailing because in *Jenkins* the admission of a police statement that was factually inconsistent with the defendant's defense strategy compelled the defendant's testimony. Here there was no inconsistency to rebut.

7

was coupled with an instruction only to consider it in connection with Asbury's credibility and not his guilt or innocence.[20] Under *Pena*'s third factor, there was strong evidence that the encounter was not consensual. The State called the neighbor who called police who testified about the Lockhart's condition after the incident.[21] Lockhart's wounds were consistent with strangulation,[22] and Asbury admitted that he forcibly restrained Lockhart.[23] Asbury's guilt was also corroborated by his admitted flight.[24] Finally, the trial judge's prompt curative instruction in these circumstances was effective to address any prejudice.[25] The Superior Court did not abuse its discretion in denying the motion for a mistrial.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice

---

[20] App. to Opening Br. at 129-30 (Tr. Test. of Asbury March 31, 2014).
[21] *Id*. at 44 (Trial Test. Of Lockhart, March 27, 2014).
[22] *Id*. at 67-70, 82-85.
[23] *Id*. at 135-36 (Trial Test. of Asbury March 31, 2014).
[24] *Id*. at 137-38; 172.
[25] *Pena*, 856 A.2d at 551. *See also Dawson v. State*, 637 A.2d 57, 62 (Del. 1994) (judge's instruction to disregard witness's reference to defendant's previously overturned death penalty conviction was sufficient).