# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IOANNIS ALEXOPOULOS, | ) | |
| | ) | |
| **Defendant-Below,** | ) | |
| **Appellant** | ) | |
| | ) | |
| v. | ) | **ID. No. 1405008028** |
| | ) | |
| **STATE OF DELAWARE,** | ) | |
| | ) | |
| **Plaintiff-Below,** | ) | |
| **Appellee.** | ) | |

Submitted: January 25, 2016
Decided: April 22, 2016

## ORDER

*Upon Appeal from the Court of Common Pleas of the State of Delaware
in and for New Castle County,*
**AFFIRMED, IN PART; DISMISSED, IN PART.**

This 22nd day of April, 2016, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)     Following a July 2015 jury trial in the Court of Common Pleas, Appellant Ioannis Alexopoulos was found guilty of Driving Under the Influence ("DUI"), Leaving the Scene of a Collision, and Improper Lane Change.[1]   Prior to

---

[1]     C.C.P. Trial Tr. at 234-35.

sentencing, the State entered a *nolle prosequi* on the leaving the scene count.[2] The Court of Common Pleas imposed a fine and probated term of imprisonment for the DUI charge. For the improper lane change, Alexopoulos received a $25 fine.[3] Alexopoulos has appealed his convictions.

(2) This Court takes criminal appeals from the Court of Common Pleas.[4] Such appeals are "reviewed on the record," not "tried de novo."[5] In that way, this Court "functions in the same manner as the Supreme Court, in its position as an intermediate appellate court, when considering an appeal from the Court of Common Pleas."[6]

(3) Here Alexopoulos argues that the Court of Common Pleas erred when it denied his motion for a mistrial after a State's witness recounted that as he implored Alexopoulos to remain at his accident scene, Alexopoulos "was determined to get away" and mentioned that "he had a previous DUI and could not stay at the scene." The Court finds that the Court of Common Pleas did not abuse

---

[2]    C.C.P. Dkt. at 1.

[3]    *Id.* at 3.

[4]    DEL. CODE ANN. tit 11, § 5301(c) (2015).

[5]    *Id.*

[6]    *Layne v. State*, 2006 WL 3026236, at *1 (Del. Super. Ct. Sept. 26, 2006) (citing *Dickens v. State*, 2003 WL 21982924, at *3 (Del. Super. Ct. July 11, 2003)); *see also Baker v. Connell*, 488 A.2d 1303, 1309 (Del. 1985) (Superior Court's function as intermediate appellate court is basically the same as the Supreme Court).

-2-

its discretion when it denied the mistrial motion. The Court therefore affirms the judgment of the Court of Common Pleas.

(4) On the very rainy evening of May 10, 2014, Alexopoulos was driving on Lancaster Pike away from Wilmington and toward the intersection with Hercules Road in New Castle County when he crashed his pickup truck into a guardrail. A witness, who was a passenger in a car traveling behind Alexopoulos, saw him travel across the center lane into oncoming traffic, then change direction and drive off the right side of the road into the guardrail.

(5) The witness's wife pulled over onto the right shoulder. While she called 911, the witness got out to see if he could assist anyone in the truck. He saw Alexopoulos "sort of stagger[] out of the vehicle" and then begin "walking up the shoulder of the road towards Hockessin."[7] As he tried to navigate the narrow shoulder, Alexopoulos was "at times veering into the road." The witness and another driver, who also saw the accident, told Alexopoulos to stop walking, and they "tried to convince him to stay at the scene."[8]

(6) The witness testified at Alexopoulos's trial. The following exchange took place between the prosecutor and the witness regarding the witness's

---

[7] C.C.P. Trial Tr. at 29.

[8] *Id.* at 29-30.

observations of Alexopoulos as Alexopolous was ambling on the shoulder:

> Q. Was there anything else about this individual that made you think he was, to use your words, off his game?
>
> A. Well, sure. I mean, his course of behavior. I mean, one of the things that we tried to do, me and this other gentleman, was to convince him to stay at the scene. And he refused to do that and his reasoning, his articulated reasoning was irrational in light of the obvious circumstances that were, that he was facing.
>
> Q. Did you ever detect an odor of alcohol from him?
>
> A. Yes.
>
> Q. Are you able to give a characterization of that odor?
>
> A. No, it was just odor of alcohol, I mean.
>
> Q. Did it -- how did his physical condition appear to you?
>
> A. Well, it's difficult. I mean, honestly he was a little disheveled. I wouldn't expect otherwise given that the nature of the accident. I was a little surprised he was, you know, not more injured than he was. He was determined to get away. And we made efforts, me and the other gentleman, to convince him to stay and his reasoning, when he said, I recall him saying that he owned a restaurant, had had a previous DUI and could not stay at the scene.[9]

Alexopoulos did not contemporaneously object to this testimony. And this was the only mention of Alexopoulos's prior DUI during the trial.[10]

---

[9] *Id.* at 31-32.

[10] Defense counsel first suggested that the witness recounted Alexopoulos's prior-DUI comment two or three times during his testimony. *Id.* at 61-62, 65, 69. He later admitted it happened only once. *Id.* at 69.

(7)     The witness continued that he told Alexopoulos "that his vehicle was on the side of the road, it had a license plate on it, [and] that [Alexopoulos]'s not going to make things better for [himself] if [he] leaves the scene."[11]     When walking, Alexopoulos could not "maintain a straight line out of traffic,"[12] and went "pretty darn far up the hill" before he eventually stopped.[13]     The witness recalled that Alexopoulos's speech was slurred.[14]     As the witness described him – upon tallying all of his observations – Alexopoulos "was a very determined person who was impaired."[15]     After the police arrived and Alexopoulos was secured, the witness spoke to a Delaware State Police trooper and gave the trooper his contact information.

(8)     Only after the witness had completed his direct, cross and redirect testimony did Alexopoulos raise any objection.     It was then that he moved for a mistrial because the witness referenced that Alexopoulos told the witness of his

---

[11]     *Id.* at 32.

[12]     *Id.* at 54.

[13]     *Id.* at 51.

[14]     *Id.* at 30, 57.

[15]     *Id.* at 53; *see also id.* at 57 (when asked what made him conclude Alexopoulos was impaired, the witness summarized: "Well, one I could smell alcohol. Two, his speech was slurred. Three, what he was doing and how he was responding to the circumstances was entirely irrational.").

prior DUI as he was leaving the accident scene.[16] Defense counsel argued the witness's miscue was so highly prejudicial to Alexopoulos because "it just totally taints it" such that he had "no chance [once] th[e] jury hears that he has a prior"[17] and so a mistrial was the only possible remedy.[18]

(9) Both defense counsel and the prosecutor acknowledged that the witness had been specifically instructed before trial not to bring up this particular statement by Alexopoulos during his testimony.[19]

(10) After a recess to conduct the appropriate research, the trial judge denied Alexopoulos's motion for a mistrial. The trial judge applied the four-factor test established by our Supreme Court to evaluate whether a witness's unsolicited comment was sufficiently prejudicial to merit a mistrial. After reviewing all of the

---

[16] *Id.* at 60-61.

[17] *Id.* at 62, 65.

[18] *Id.* at 61-62, 72-73 (defense counsel arguing that, based on his vast DUI experience, a mistrial is the only appropriate remedy and is always granted in such a circumstance).

[19] *Id.* at 60-65, 85 (defense counsel noting witness properly instructed); *id.* at 65-66, 70 (prosecutor confirming that witness was properly instructed before testifying). The Delaware Supreme Court has directed the State to "prepare [its] witnesses to avoid the risk of prejudice from an unnecessary reference" to a defendant's past criminal acts. *See Justice v. State*, 947 A.2d 1097, 1102 n.27 (Del. 2008). There is no doubt here that the appropriate caution was given to the witness; the witness, however, drifted into the wrong lane by recounting Alexopoulos's words at the roadside when he was asked to testify about Alexopolous's physical appearance. C.C.P. Trial Tr. at 31-32.

factors, the court found they weighed against a mistrial.[20] In sum, the trial judge found that the witness made the one statement "in passing, not for the truth of the matter but the fact that someone made that statement to him," and that it was not a "close case."[21] The trial judge found the statement was not sufficiently prejudicial to warrant a mistrial and instead, a curative jury instruction would suffice. But Alexopoulos declined the offer of a curative jury instruction because he did not want to "emphasize the problem." Per Alexopoulos's request, the trial judge gave no curative instruction.[22]

(11) Whether to grant a mistrial after an unsolicited response by a witness rests within the trial judge's sound discretion[23] because "the [ ] Court [of Common Pleas] is in a better position to measure the risk of prejudice from events at trial."[24] A mistrial is required only where there is "manifest necessity or the ends of public

---

[20] *Id.* at 85-88 (citing *Revel v. State*, 956 A.2d 23 (Del. 2008), which applied the oft-used four-factor test articulated in *Pena v. State*, 856 A.2d 548, 550-51 (Del. 2004) to decide whether a mistrial should be granted in response to a witness's allegedly prejudicial testimony).

[21] *Id.* at 85-88.

[22] *Id.* at 88-89.

[23] *Taylor v. State*, 690 A.2d 933, 935 (Del. 1997).

[24] *Justice*, 947 A.2d at 1110 (quoting *Guy v. State*, 913 A.2d 558, 565 (Del. 2006)); *Jones v. State*, 2013 WL 596379, at *2 (Del. Feb. 14, 2013) ("We recognize that trial judges are in a better position to assess the risk of prejudice resulting from trial events compared to appellate judges reviewing a transcript.").

justice would be otherwise defeated"[25] and there are "no meaningful and practical alternatives."[26] This Court reviews the Court of Common Pleas' denial of a motion for mistrial in these circumstances for abuse of discretion or a denial of a substantial right of the defendant.[27] The denial will be reversed on appeal only if it is based on unreasonable or capricious grounds.[28]

(12)   As an initial matter, this Court is skeptical, as was the trial judge,[29] that the witness's mention of Alexopoulos's mid-flight statement providing his reason for not sticking around for the police was improper. Evidence of flight and consciousness of guilt was directly relevant to central issues in the case—whether Alexopoulos was under the influence, knew he was under the influence, and was fleeing the accident scene because he knew that he was under the influence. Such evidence is generally and has long-been admissible in criminal cases.[30]   And it

---

[25]    *Gomez v. State*, 25 A.3d 786, 793-94 (Del. 2011) (citing *Banther v. State*, 977 A.2d 870, 890 (Del. 2009)).

[26]    *Ashley v. State*, 798 A.2d 1019, 1022 (Del. 2002).

[27]    *Justice*, 947 A.2d at 1102 (quoting *Pena v. State*, 856 A.2d 548, 550 (Del. 2004)).

[28]    *Banther*, 977 A.2d at 890 (citing *Zimmerman v. State*, 628 A.2d 62, 65 (Del. 1993)).

[29]    *See, e.g.*, C.C.P. Trial Tr. at 73.

[30]    *See Colon v. State*, 1994 WL 605540, at *2 (Del. Oct. 27, 1994) ("The general rule is that evidence of flight can be used in a criminal prosecution to establish consciousness of guilt."); *McKinney v. State*, 466 A.2d 356, 359 (Del. 1983) (any conduct undertaken by a defendant to conceal crime that tends to show consciousness of guilt is relevant); *Thomas v. State*, 467 A.2d 954, 958 (Del. 1983) (citing *Tice v. State*, 382 A.2d 231, 233 (Del. 1977)) (flight instruction proper "where there is evidence of flight or concealment and the evidence reasonably supports an

would have been particularly relevant here where defense counsel was offering alternative explanations for Alexopoulos's departure.[31] But assuming, as the parties have in this appeal, that the witness should not have referred to Alexopoulos's own contemporaneous explanation as to why he was leaving the accident scene, this Court should review the Court of Common Pleas' application of the mistrial analysis adopted by the Delaware Supreme Court.

(13) When considering whether a witness's unsolicited comments require the trial judge to declare a mistrial, this Court looks to the four-factor test of *Pena v. State*—first, the nature and frequency of the offending comment; second, the likelihood of resulting prejudice; third, closeness of the case; and fourth, the adequacy of the trial judge's actions to mitigate any potential prejudice.[32] Considering these factors, the Court of Common Pleas did not abuse its discretion by refusing to grant a mistrial.

(14) Perhaps – no, certainly – it would have been better had the witness honored the State's strategic decision to forgo use of Alexopoulos's admission and

---

inference that defendant fled because 'of a consciousness of guilt and a desire to avoid an accusation based thereon, or for some other reason. . . .'").

[31] C.C.P. Trial Tr. at 64-65, 84 (Defense counsel: "And my argument was he left because it was pouring rain, he couldn't get in his car . . . He couldn't get into his car 'cause he locked his keys in the car. And he's gonna go home.").

[32] 856 A.2d 548, 550-51 (Del. 2004) (adopting the four-part analysis first articulated in *Taylor v. State*, 690 A.2d 933, 935 (Del. 1997) to assess a "witness outburst" situation for a case in which a mistrial was requested after an unsolicited prejudicial response by a witness).

not indulged his own unresponsive riff to a wholly proper question. No doubt, his unilateral injection of the defendant's ramblings left the trial court, prosecutor and defense counsel with no opportunity to engage in the preadmission balancing required under Delaware Rule of Evidence 403.[33] But misadventures by testifying witnesses rarely require mistrials or reversals of trial court decisions denying them. Instead, such unfortunate circumstances are examined under *Pena*. The Court will do so here.

(15) First, the nature and frequency of the witness's comment do not favor the grant of a mistrial. He mentioned Alexopoulos's statement revealing his prior DUI only once. And then, it was only the unresponsive tail end of a prolix answer to an undoubtedly proper question posed by the prosecutor. Thus, the mention of Alexopoulos's "previous DUI" was "neither persistent nor frequent" but was a "one-time occurrence."[34] When a comment is "fleeting, unsolicited, and reflect[s the defendant's] own words," it does not necessitate a mistrial.[35] Accordingly, the first *Pena* factor did not favor a mistrial.

---

[33] D.R.E. 403 ("Although relevant, evidence may be excluded if its probative value is *substantially outweighed* by the danger of unfair prejudice. . .") (emphasis added).

[34] *Copper v. State*, 85 A.3d 689, 694 (Del. 2014).

[35] *Smith v. State*, 963 A.2d 719, 723 (Del. 2008); *see also Asbury v. State*, 2015 WL 5968404, at *3 (Del. Oct. 13, 2015) (single offending comment in rape and strangulation trial that defendant previously "went to jail" weighed against mistrial); *Payne v. State*, 2015 WL 1469061 (Del. Mar. 30, 2015) (fact that it was a single witness's single statement that defendant had been "locked up" militated against a mistrial); *Jones v. State*, 2013 WL 596379 (Del. Feb.

-10-

(16) *Pena*'s second factor requires the Court to consider the extent of any prejudice caused by the comment. Alexopoulos argues that *Gomez v. State*[36] should control here. In *Gomez*, the Supreme Court determined that this Court abused its discretion by denying a mistrial and electing to issue a curative instruction where a witness testified that the defendant had also committed a sexual assault against the victim's cousin. The trial court in *Gomez* had previously ruled evidence of that sexual assault against a different niece inadmissible.[37] The Supreme Court found that the witness's statement "created an impermissible inference that [the defendant] committed the offense for which he was being tried," and the subject matter was so closely related to the charged conduct that a curative instruction could not have remedied the prejudice to the defendant.[38]

(17) Alexopoulos's reliance on *Gomez* is unavailing.[39] While the witness's testimony was somewhat related to the offense for which Alexopoulos was being tried (a DUI), the remark about the prior was Alexopoulos's own. Here the

---

14, 2013) (witness's one statement that he saw "mug shots" of the defendant was not sufficient to warrant a mistrial).

[36]    25 A.3d 786, 794-95 (Del. 2011).

[37]    *Id.*

[38]    *Id.*

[39]    So too is his reliance on *Ashley v. State* where a spectator's courtroom outburst patently prejudiced the defendant's claim of self-defense because it accused the defendant of previously being the aggressor in an unprovoked stabbing that had earlier been specifically ruled inadmissible by the trial court. 798 A.2d 1019 (Del. 2002).

witness's testimony was not revealing the existence or facts of Alexopoulos's previous conviction. He relayed only the comment Alexopoulos made about how that prior was affecting his actions on the evening of the accident. Alexopoulos's statement had never been formally excluded from evidence by the court. And again, Alexopoulos's own words while he fled the accident scene may have otherwise been admissible to demonstrate the reason for Alexopoulos's attempt to avoid the police and his consciousness of his own impairment when he hit the guardrail. In turn, it was far less prejudicial than an accusatory outburst or reference to a prior crime the witness claimed to have had personal knowledge of.[40] As such – while maybe a closer call – the second *Pena* factor did not favor a mistrial.

(18) The third *Pena* factor requires the Court to consider whether Alexopoulos's was a "close case." Prejudice from a witness's improper statement is mitigated where there is "strong, independent evidence" of guilt.[41] This was not a close case. The remaining evidence—the witness's testimony that Alexopoulos suddenly veered off the road, smelled like alcohol, had slurred speech, walked up

---

[40]    *See Snipes v. State*, 2015 WL 1119505, at *3 (Del. Mar. 12, 2015) (finding no likelihood of prejudice where witness's comments complained of were "vague, innocuous, and made no specific reference to [defendant] or the crime for which he was charged").

[41]    *See Jones v. State*, 2013 WL 596379, at *2 (Del. Feb. 14, 2013); *see also Payne v. State*, 2015 WL 1469061, at *4 (Del. Mar. 30, 2015) (finding case was "not close" where three witnesses identified defendant as committing the offense).

the road erratically, and acted irrationally; the investigating trooper's testimony that Alexopoulos smelled like alcohol, had slurred speech and bloodshot eyes; and the Intoxilizer results that showed Alexopoulos had a prohibited alcohol content of 0.14[42]—was overwhelming evidence that Alexopoulos violated Delaware's DUI statute. Thus, the third prong of *Pena* favors the State.[43]

(19)  As to the final *Pena* factor, the trial judge offered to give a curative jury instruction, but Alexopoulos made a strategic decision to decline it.[44] Alexopoulos's decision to decline the Court of Common Pleas' offer to give a curative instruction was a tactical decision that constitutes a waiver of the ability to argue here that the trial judge's efforts to mitigate any prejudice were insufficient.[45] So the fourth *Pena* factor weighs against Alexopoulos.[46]

(20)  The Court of Common Pleas properly assessed the factors for determining whether a mistrial was necessary, and concluded that a sufficient alternative to a mistrial existed in a curative instruction, which Alexopoulos

---

[42]    C.C.P. Trial Tr. at 99-100, 117, 146.

[43]    *See Pena v. State*, 856 A.2d 548, 551 (Del. 2004) (finding it was "not a close case" where two witnesses testified against defendant, claiming they were carrying drugs for him).

[44]    C.C.P. Trial Tr. at 88-89.

[45]    *See Andrus v. State*, 1998 WL 736338, at * 4 (Del. Oct. 1, 1998).

[46]    *See Snipes v. State*, 2015 WL 1119505, at *4 (Del. Mar. 12, 2015) ("Snipes' counsel expressly requested that the trial court refrain from giving such an instruction. Accordingly, the fourth *Pena* factor weighs in favor of the State.").

-13-

expressly requested the trial judge refrain from giving. After carefully weighing the factors under the *Pena* analysis, this Court concludes that the Court of Common Pleas was within its discretion in denying Alexopoulos's motion for a mistrial.

**NOW THEREFORE, IT IS ORDERED** that the Court of Common Pleas' judgment of conviction on the DUI charge is, therefore, **AFFIRMED.** Because the sentence for the lane change violation does not meet the jurisdictional requirement, the appeal as to that conviction must be **DISMISSED** without review.[47]

**SO ORDERED this 22nd day of April, 2016.**

**PAUL R. WALLACE, JUDGE**

Original to Prothonotary

cc: Louis B. Ferrara, Esquire
Danielle J. Brennan, Deputy Attorney General

---

[47] *See Reese v. State,* 2014 WL 4059213, at *1 (Del. Aug. 15, 2014) (Supreme Court must dismiss appeal of any individual sentence that fails to meet the constitutional threshold for appealable sentences); *Castura v. State,* 2009 WL 2365558, at *2 (Del. July 16, 2009) (when appeal is to the Supreme Court, "each sentence [imposed] must be evaluated individually in order to determine whether it meets the constitutional threshold" and for those sentences that do not "meet the jurisdictional requirement . . . appeal as to those convictions must be dismissed without review"); *Stevens v. State,* 110 A.3d 1264, 1272 (Del. Super. Ct. 2015) (citing *Johnson v. State,* 2008 WL 2721698, at *1 (Del. July 14, 2008)) (same for appeals to this Court from the Court of Common Pleas).