IN THE SUPREME COURT OF THE STATE OF DELAWARE

ISAIAH BOYKIN,           §
                         §   No. 92, 2016
   Defendant-Below,      §
   Appellant,            §   Court Below: Superior Court
                         §   of the State of Delaware
   v.                    §
                         §   Cr. ID. No. 1410012608
STATE OF DELAWARE,       §
                         §
   Plaintiff-Below,      §
   Appellee.             §

Submitted: October 13, 2016
Decided:   October 27, 2016

Before **HOLLAND**, **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 27th day of October, 2016, having considered the briefs and the record below, it appears to the Court that:

(1)   In 2013, a New Castle County grand jury indicted Isaiah Boykin for robbery and related offenses for beating and robbing Gage Pyle. Boykin's co-conspirator, Donna Evans, testified against him at trial. On cross examination, defense counsel asked about Evans' relationship with Boykin, and if the two had previously engaged in sexual intercourse. She said that they had been intimate on one occasion and that if she had not been under the influence of drugs supplied by Boykin she would not have done it. Boykin's counsel objected to the answer and

requested a curative instruction. The Superior Court declined, explaining that the witness's statement was simply a reply to the question counsel asked. A jury eventually convicted Boykin on all charges. On appeal, Boykin argues that the Superior Court abused its discretion when it declined to give a curative instruction and plainly erred by failing to immediately grant a mistrial on the basis of Evans' testimony. According to Boykin, Evans' comment amounted to a rape allegation, and denied him the right to a fair trial. We find Boykin's arguments to be without merit, and affirm.

(2) On October 17, 2014, Evans contacted her ex-boyfriend Pyle to buy marijuana for herself, Boykin, Josh Campos, and others. When Evans told them that Pyle had marijuana for them to buy, Boykin and Campos decided they would steal the marijuana from him instead. Evans arranged for Pyle to meet her at a friend's home in the Hampton Walk Apartments in New Castle, Delaware.

(3) Pyle's friend, Kenyatta Berg-Moultry, drove him from Smyrna to the New Castle apartment. There were two other individuals in the car. Pyle got out of the car and followed Evans up the stairs into a nearby apartment building while the others waited in the car. As Pyle was walking up the stairs, he saw a man with a tattoo on his hand wearing a black hooded sweatshirt sitting on the steps. Pyle began to feel nervous and tried to run down the stairs.

(4)     When he turned to leave, the man, who he later identified as Boykin, pulled him down the stairs.  Boykin hit him repeatedly over the head while several of Boykin's associates, including Campos, stole his money, marijuana, and cell phone.  Boykin held a gun to Pyle's throat, pistol-whipped him, and threatened to kill him.  When Pyle got up, Boykin bent Pyle over a car near Berg-Moultry's car, and told him to tell his friends to give him everything they had.  Berg-Moultry saw the gun and sped away down the wrong side of the street, nearly hitting a police car.  Berg-Moultry shouted to the police that somebody was being robbed around the corner and drove away.

(5)     The police stopped Berg-Moultry's car.  After explaining to the police that they had just witnessed a robbery, Berg-Moultry pointed to three individuals walking by as the men that had robbed his friend.  One of the two police officers ran after them and caught Campos.  When he returned, Pyle was standing with the group next to the other officer.  He was covered in blood.  Tammy Caraballo, a resident at the Hampton Walk Apartments, saw the attack occur and had driven Pyle to where the police and Pyle's friends were gathered.  Pyle later identified Boykin in a photo lineup at the hospital as the main attacker.

(6)     The following day, on October 18, 2014, police arrested Boykin at a shopping center.  Boykin was wearing a black hooded sweatshirt and had Pyle's cell phone.  A grand jury indicted Boykin on charges of robbery first degree,

3

assault second degree, two counts of possession of a deadly weapon during the commission of a felony, possession of a deadly weapon by a person prohibited, conspiracy second degree, possession of marijuana, and terroristic threatening. Before trial, the State entered a *nolle prosequi* on the marijuana charge.

(7) Evans cooperated with the State in exchange for a plea deal. At trial, she testified against Boykin. She was distressed and cried throughout direct examination. During cross examination, Boykin's counsel elicited that Boykin had provided her with drugs that Evans took before their only sexual encounter.

| Counsel: | Okay. Now, I know on direct examination, you said that Mr. Boykin was not your boyfriend. |
| --- | --- |
| Evans: | Correct. |
| Counsel: | But you were sleeping with him? |
| Evans: | It was one time and, no, if I wasn't under the influence and if he wasn't feeding me Xanax and Ecstasy pills, no, I would not have done it. I would not have done it. And you have text messages, you can see that.[1] |

(8) At sidebar, Boykin's counsel requested a curative instruction, and the State did not oppose. But the Superior Court denied counsel's request, stating:

"This is one of the problems when you ask questions of people you do not interview. You tread on dangerous ground and sometimes the ice breaks through. And this is something that you asked of someone who is an emotional witness and, so, that's the answer you got."[2]

---

[1] App. to Opening Br. at 407.
[2] *Id*. at 408.

4

Neither side questioned Evans' and Boykin's relationship further or commented on it during closing argument. After a four day trial, a Superior Court jury convicted Boykin on all charges. The Superior Court sentenced Boykin to a total of thirty years at level V incarceration, suspended after seven years for decreasing levels of supervision. This appeal followed.

(9) Boykin raises two arguments on appeal. First, he argues that the Superior Court abused its discretion when it refused to give a curative instruction regarding Evans' testimony about her sexual encounter with Boykin. He argues that her testimony was essentially that Boykin sexually assaulted her, which prejudiced his right to a fair trial. He also makes a related argument that the Superior Court committed plain error by failing to immediately declare a mistrial after Evans' testimony. This Court reviews the denial of a request for a curative instruction for abuse of discretion.[3] "An abuse of discretion occurs when a court has exceeded the bounds of reason in view of the circumstances, or so ignored recognized rules of law or practice to produce injustice."[4]

(10) "A trial court has the sole discretion whether and when to give a curative instruction to the jury because it 'is in a better position to determine

---

[3] *Sammons v. Doctors for Emergency Servs., P.A.*, 913 A.2d 519, 539 (Del. 2006).
[4] *Culp v. State*, 766 A.2d 486, 489 (Del. 2001) (internal citations omitted).

whether a curative instruction should be given.'"[5]  Where a trial court should have given a curative instruction, reversal is required only if this Court cannot say the error was harmless beyond a reasonable doubt.[6]

(11)  Boykin argues that this Court's decisions in *Widgeon v. State*[7] and *Reid v. State*[8] establish that the Superior Court abused its discretion when it refused to give a curative instruction.  In *Widgeon*, the defendant was on trial for stabbing his girlfriend during an argument.  At trial, the State asked the girlfriend how she felt when the defendant touched her face during the argument, and the girlfriend said she was scared because the defendant had beaten her several times in the past.[9]  In *Reid*, the defendant was on trial for sexually assaulting his girlfriend's daughter.  At trial, the girlfriend testified that "it was out before that he had [done] something to the girls."[10]  In both cases, this Court found that the trial judges' curative instructions were sufficient to cure any prejudice the statements caused.

(12)  *Widgeon* and *Reid* do not assist Boykin.  First, in neither case did this Court rule that the judge abused his discretion by failing to give a curative instruction.  Rather, we held that the Superior Court did not err by failing to grant a mistrial, and that a curative instruction sufficiently removed any potential prejudice

---

[5] *Hamilton v. State*, 82 A.3d 723, 726 (Del. 2013) (quoting *Sammons*, 913 A.2d at 539).
[6] *Ashley v. State*, 85 A.3d 81, 86 (Del. 2014).
[7] *Widgeon v. State*, 870 A.2d 1192, 2005 WL 580304 (Del. March 7, 2005) (Table).
[8] *Reid v. State*, 888 A.2d 232, 2005 WL 3272134 (Del. Nov. 30, 2005) (Table).
[9] *Widgeon*, 2005 WL 580304, at *1.
[10] *Reid*, 2005 WL 3272134, at *1.

6

the statements caused. Further, in both *Widgeon* and *Reid*, the witnesses' statements were made during the State's direct examination and were directly related to the subject of the litigation.

(13) In this case, Evans' testimony came out on cross, not on direct. Further, Evans' statement was unrelated to the subject of the litigation. Rather, in response to defense counsel's question about her sexual relationship with Boykin, she expressed regret, and said she would not have done it had she not been intoxicated. She did not directly testify that Boykin raped her or that he forced her to take drugs. There was clear evidence that Evans was involved with drugs as she was the one who set up the drug deal. Here, defense counsel pried too closely into an emotional witness's personal life and received an unresponsive answer. Under the circumstances, the court did not "exceed the bounds of reason" or "ignore recognized rules of law" when he declined to give a curative instruction.

(14) Further, the Superior Court's failure to give a curative instruction was harmless beyond a reasonable doubt.[11] The State presented substantial evidence implicating Boykin in the robbery. Pyle testified that Boykin beat and robbed him. He noticed Boykin's tattoo on his hand and that he was wearing a black hooded sweatshirt. He quickly picked out Boykin from a photo lineup later that evening.

---

[11] *Williams v. State*, 98 A.3d 917, 922 (Del. 2014) ("Where the evidence exclusive of the improperly admitted evidence is sufficient to sustain a conviction, error in admitting the evidence is harmless.") (internal citation omitted).

After the attack, Berg-Moultry pointed out the group of men who attacked Pyle. Video surveillance showed Boykin and Campos with that group near the site of the attack, and Boykin was wearing a black hooded sweatshirt. Boykin had Pyle's cell phone when the police arrested him. Evans, Berg-Moultry, and Caraballo all testified consistently with Pyle's account. Thus, any possible error the Superior Court made in refusing to give a curative instruction was harmless beyond a reasonable doubt.

(15) Boykin next argues that the Superior Court erred by failing to immediately declare a mistrial after Evans' testimony. Boykin did not request a mistrial. We therefore review only for plain error.[12] A mistrial is required only where there is manifest necessity or the ends of public justice would be otherwise defeated."[13] In *Pena v. State*, this Court set forth a four-part test to determine whether a witness's unsolicited response requires a mistrial: (1) the nature and frequency of the conduct or comments; (2) the likelihood of resulting prejudice; (3) the closeness of the case; and (4) the sufficiency of the trial judge's efforts to mitigate any prejudice in determining whether a witness's conduct was so prejudicial as to warrant a mistrial.[14]

---

[12] *Czech v. State*, 945 A.2d 1088, 1097 (Del. 2008).
[13] *Pena v. State*, 856 A.2d 548, 552 (Del. 2004). "A trial judge sits in the best position to determine the prejudicial effect of an unsolicited response by a witness on the jury." *Id.* at 550.
[14] *Id*. at 550-51.

8

(16) First, Evans' statement was said only once and was never referenced again. Second, the comment was unlikely to prejudice Boykin because it was completely unrelated to the charged crimes. Additionally, the jury was aware that Evans was involved with drugs, and counsel thoroughly exposed that she may have had motive to fabricate her testimony as a co-conspirator cooperating with the State in exchange for a plea deal. Third, as explained above, this was not a close case. The evidence against Boykin was strong and substantial. Finally, although the trial judge did not take steps to mitigate any potential prejudice the statement caused, the balance of the factors do not weigh in favor of a mistrial. Thus, the Superior Court did not err by failing to declare a mistrial.

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice